IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOHN D. WHITENACK,

       Plaintiff,

v.                                                                                    CIV 09-0470 KBM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff John D. Whitenack's motion to reverse

and remand the Commissioner's decision denying him disability insurance benefits. *Docs. 15,*

*17.* Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73(b), the parties have consented to

have me serve as the presiding judge and enter final judgment. *See Docs. 4, 6.* The entire record

has been meticulously reviewed. *See, e.g., Grogan v. Barnhart,* 399 F.3d 1257, 1262 (10th Cir.

2005). The issue is straightforward, as are the administrative law judge's ("ALJ") decision and

the parties' briefs. The Court, therefore, will only recite the facts which are necessary for its

disposition. For the reasons set forth below, Plaintiff's motion is granted and the matter is

remanded to the Commissioner for further proceedings.

### Standard Of Review

If substantial evidence supports the ALJ's findings and the correct legal standards were

applied, the Commissioner's decision stands, and Plaintiff is not entitled to relief. *See Hackett v.*

*Barnhart,* 395 F.3d 1168, 1172 (10th Cir. 2005). A deficiency in either area is independent

grounds for relief.  *See Hamlin v. Barnhart,* 365 F.3d 1208, 1214 (10th Cir. 2004).  "'Substantial

evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion.'" *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir.

2007) (quoting *Grogan*, 399 F.3d at 1261-62).  I can neither reweigh the evidence nor substitute

my judgment for that of the agency.  *Hamlin*, 365 F.3d at 1214; *see also Langley v. Barnhart*,

373 F.3d 1116, 1118 (10th Cir. 2004).  Thus,

> "The possibility of drawing two inconsistent conclusions from the
> evidence does not prevent an administrative agency's findings from
> being supported by substantial evidence."  *Zoltanski*, 372 F.3d at
> 1200.  We may not "displace the agenc[y's] choice between two
> fairly conflicting views, even though the court would justifiably have
> made a different choice had the matter been before it de novo."  *Id.*

*Lax v. Astrue,* 489 F.3d 1080, 1084 (10th Cir. 2007).

## The Sequential Evaluation Process

"To qualify for disability benefits, a claimant must establish a severe physical or mental

impairment expected to result in death or last for a continuous period of twelve months which

prevents the claimant from engaging in substantial gainful activity." *Thompson v. Sullivan*, 987

F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423(d)(1)(A)).  The Social Security

Administration employs a "five-step sequential evaluation process to determine disability."

*Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).  "If at any step in the process the Secretary

determines that the claimant is disabled or is not disabled, the evaluation ends." *Thompson*, 987

F.2d at 1486.

At step one of the process, the claimant must show that he is not working at a substantial

gainful activity.  *See* 20 C.F.R. § 404.1520(b).  At step two, the claimant must show that he has a

severe medically determinable physical or mental impairment or combination of impairments

which significantly limit his ability to do basic work activities.  *See* 20 C.F.R. § 404.1520(c).  At

step three, the claimant must show that he has an impairment that meets or equals one of the

impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, and that it meets the duration

requirement.  *See* 20 C.F.R. §§ 1520(d), 404.1525, and 404.1526.  If the claimant has an

impairment that meets or equals one of the listed impairments and the duration requirement, he

will be deemed disabled.  If not, the analysis proceeds to step four.  At step four, the ALJ must

assess and determine the claimant's residual functional capacity ("RFC") and consider, in light

of this RFC, whether the claimant can still do his past relevant work.  *See* 20 C.F.R. §

404.1520(e).  At the fifth and final step, the burden shifts to the Commissioner, who must show

that the claimant is capable of performing "an alternative job that is available in the national

economy in light of the claimant's age, education, and work experience."  *Madron v. Astrue*, 311

F. App'x 170, 175 (10th Cir. 2009) (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir.

1988)).

## Background

Plaintiff, now 69-years old, has a law degree and previously worked as an attorney in

Illinois.  *See Administrative Record (Record)* at 256, 259.  Plaintiff alleges that he has suffered

from hearing loss his entire life.  He is currently receiving early retirement benefits.  *See Doc. 15*

at 3; *see also Record* at 314.

In 2003, Plaintiff filed his first application for disability insurance benefits alleging a

December 31, 1986 onset of disability due to hearing loss, depression, and a heart condition.  *See*

*Record* at 250; *see also Doc. 15* at 3.  When a claimant seeks disability insurance benefits, he

must establish disability while in insured status.  *McQuestion v. Astrue*, 629 F. Supp. 2d 887, 892

(E.D. Wis. 2009) (citations omitted); *see also Potter v. Sec'y of Health & Human Servs.*, 905

F.2d 1346, 1347-49 (10th Cir. 1990).  Thus, in this case, Mr. Whitenack is required to show that he was disabled on or before December 31, 1986, both his alleged date of onset and date last insured.

Plaintiff's application was denied initially and upon reconsideration.  Plaintiff then requested a hearing before an ALJ.  Plaintiff appeared unrepresented on May 30, 2007 at a hearing in Evanston, Illinois, before ALJ Maren Dougherty.  *See Record* at 23.  Also present were medical expert, Dr. Daniel Schiff and vocational expert ("VE"), William Newman.  *Id.*

The ALJ issued an unfavorable decision denying Plaintiff disability insurance benefits on August 28, 2007.  *Id.* at 10.  Although the ALJ determined that Plaintiff had bilateral hearing loss, she concluded that Plaintiff had the RFC to perform a full range of work at all exertional levels.  *Id.* at 16.  Additionally, however, the ALJ noted that Plaintiff could not work in a loud environment or where communication via the telephone or in person was required more than occasionally.  *Id.*  With the aid of the testimony from the VE, the ALJ determined that Plaintiff was unable to perform his past relevant work as an attorney.  *Id.* at 18-19.  The ALJ specifically found that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' regardless of whether [he] has transferable job skills." *Record* at 19.  The VE identified two jobs, janitor and hand packager, that Plaintiff could perform.  *Id.*  Accordingly, at step five, the ALJ concluded that Plaintiff was not under a disability on December 31, 1986.  *Id.* at 20.

Plaintiff requested review of the ALJ's decision.  *See id.* at 9.  The Appeals Council denied review in March 2009, thereby rendering the ALJ's decision final.  *Id.* at 6; *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) ("Because the Appeals Council denied review, the

ALJ's decision is the Commissioner's final decision for purposes of this appeal.").

**Analysis**

Plaintiff essentially contends that the ALJ committed a single error: failing to investigate

the conflicts between the VE's testimony and the Dictionary of Occupational Titles ("DOT").

*See Docs. 15, 17.*  In his response, the Commissioner agrees that the VE's testimony is

inconsistent with the DOT, however, he asserts this error is harmless.  *See Doc. 16.*  In this case,

the harmless error analysis cannot be applied to salvage the ALJ's failure to resolve the

discrepancies between the VE's testimony and the DOT.

> In *Haddock v. Apfel*, the Tenth Circuit held

>> that before an ALJ may rely on expert vocational evidence as
>> substantial evidence to support a determination of nondisability, the
>> ALJ must ask the expert how his or her testimony as to the exertional
>> requirement of identified jobs corresponds with the Dictionary of
>> Occupational Titles, and elicit a reasonable explanation for any
>> discrepancy on this point.

196 F.3d 1084, 1087 (10th Cir. 1999).  Furthermore, in *Hackett*, the Tenth Circuit clarified that

its holding in *Haddock* was not limited to only discrepancies with respect to exertional

limitations.  395 F.3d at 1175.  Thus, the Tenth Circuit stated, *Haddock* controls whether the

ALJ fulfilled her duties regarding any conflict between the DOT job descriptions and Plaintiff's

nonexertional limitations.  *Id.*  And Social Security Ruling (SSR) 00-4p "explicitly requir[es]

that the ALJ determine whether the expert's testimony deviates from the [DOT] and whether

there is a reasonable explanation for any deviation."  *Massachi v. Astrue*, 486 F.3d 1149, 1153

(9th Cir. 2007).

In holding that "the ALJ must investigate and elicit a reasonable explanation for any

conflict between the Dictionary and expert testimony as substantial evidence to support a

determination of nondisability," the *Haddock* Court emphasizes the fact that it is the ALJ's

burden, not the Plaintiff's, at step five to develop the vocational evidence.  196 F.3d at 1090-91.

The Court further stated "[t]o allow an ALJ to elicit and rely on summary conclusions given by a

VE, in the absence of contrary testimony elicited by the claimant through cross-examination,

would amount to shifting the burden to produce and develop vocational evidence back to the

claimant."  *Id.* at 1090.  Furthermore, the Court held that "[q]uestioning a vocational expert

about the source of his opinion and any deviations from a publication recognized as authoritative

by the agency's own regulations falls within this duty."  *Id.* at 1091.

At the hearing, the VE testified that according to the DOT, Plaintiff's past work as a

lawyer "is defined as highly skilled, sedentary level work, with a[] [specific vocational

preparation] of eight."  *Record* at 70.  In her hypothetical, the ALJ instructed the VE to assume

an individual 46 years-old (Plaintiff's age at the time his insured status expired) with a law

degree, past work experience as an attorney, who is unlimited exertionally, but cannot work in a

loud environment or where he would be required to communicate by telephone, or more than

occasionally.  *Id.* at 71.  The VE testified that Plaintiff was unable to perform his past relevant

work because it required more than occasional communication and some telephone usage.  *Id.* at

73.  Taking this into consideration, the VE stated "we need to look at something [] that would be

considered *unskilled* work."  *Id.* (emphasis added).  The VE then identified two jobs – janitor

and hand packager – which he referred to as unskilled, simple, repetitive, one and two-step type

jobs with no exertional limitation.  *Id.* at 73-74.  The ALJ asked the VE if his testimony was

"consistent with the [DOT] and related publications," to which he replied "yes."  *Id.* at 75.

As it turns out, the VE's testimony was not consistent with the DOT.  The DOT defines

the job of a janitor as semi-skilled with a specific vocational preparation of three.  This

description is not consistent with an "unskilled . . . simple, repetitive, one[], two-step type[] of job[]" described by the VE. *Record* at 74. Although the VE testified that Plaintiff could not work in his past capacity as a lawyer because it requires more than occasional communication and some telephone work, *see id.* at 72-73, it does not appear that the VE determined Plaintiff could not perform his past relevant work because of the skill-level required. However, providing no explanation as to why, the VE stated the need to look at unskilled work. Moreover, in her written decision the ALJ states: "[t]o determine the extent to which these limitations eroded the occupational base of *unskilled* work at all exertional levels . . . ." *Record* at 19 (emphasis added). And while it is true that Plaintiff's past work had a specific vocational preparation of eight, the ALJ determined that transferability of job skills was not material.[1] *See id.*

The second job identified by the VE was that of hand packager. While the DOT does list the job of hand packager as unskilled with a specific vocational preparation of two, it lists a noise level of four or loud. A noise level of four or loud does not comport with the ALJ's instruction that Plaintiff "cannot work in a job in a loud environment." *Record* at 71. The Commissioner asserts that "[t]he focus of the ALJ's inquiry was on Plaintiff's ability to communicate, not the sensitivity of or potential damage to his hearing." *Doc. 16 at 5*. Although this may be the case, the ALJ does not state this proposition, and therefore, the Court cannot infer. *See Shivel v. Astrue*, 260 F. App'x 88, 91 (10th Cir. 2008) ("This is a post-hac attempt to justify the agency's deficient analysis."); *see also Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

---

[1] "When the issue of skills and their transferability must be decided, the adjudicator or ALJ is required to make certain findings of fact and include them in the written decision. . . . When a finding is made that a claimant has transferable skills, the acquired work skills must be identified, and specific occupations to which the acquired work skills are transferable must be cited in the State agency's determination or ALJ's decision." SSR 82-41, 1982 WL 31389, at *7.

The burden is on the ALJ at step five.  The ALJ should have investigated and elicited a reasonable explanation from the VE for any conflicts between his testimony and the DOT, rather than relying on the summary conclusion that the VE's testimony was consistent with the DOT. "[T]he ALJ could [then] have properly relied on the VE's testimony if it were rationally explained and supported by the record."  *Gravel v. Barnhart*, 360 F. Supp. 2d 442, 451 n.22 (N.D.N.Y. 2005) (citations omitted); *see also Carey v. Apfel*, 230 F.3d 131, 144 (5th Cir. 2000) (citing *Haddock*, 196 F.3d at 1084) (The Tenth Circuit holds that "when the vocational expert's testimony is either in conflict with the DOT or creates a conflict in the evidence based upon the DOT, the ALJ may, nonetheless, rely upon the vocational expert's testimony if the record reflects a substantial reason for deviating from the DOT.").

The Court feels as a practical matter that there are jobs that Plaintiff could have performed in 1986 despite his bilateral hearing loss.  This is evidenced by the fact that Plaintiff did not have a mental impairment and that his past job as an attorney has a specific vocational preparation of eight.  As of his date last insured, Plaintiff was only 46-years old.  Having previously worked as an attorney and having continued to do legal work post-1986, Plaintiff was surely capable of performing the job of janitor, despite that it may require up to three months to learn the job.  "Even though semiskilled occupations require more than 30 days to learn, the content of work activities in some semiskilled jobs may be little more than unskilled."  SSR 82-41, 1982 WL 31389, at *2.  Nevertheless, such a conclusion by this Court would amount to "usurping the administrative tribunal's responsibility to find the facts."  *See Allen*, 357 F.3d at 1145.  As such, remand is required.

Wherefore,

**IT IS HEREBY ORDERED** that Plaintiff's motion is granted and the matter is

remanded to the Commissioner for further proceedings consistent with this Order.  A final order

will be entered concurrently herewith.

_____

UNITED STATES MAGISTRATE JUDGE
Presiding by consent.